**JAMES R. FROCCARO, JR.**
Attorney at Law
20 Vanderventer Avenue, Suite 103W
Port Washington, NY 11050
telephone: (516) 944-5062
fax: (516) 944-5066
email: JRFESQ61@aol.com

July 18, 2012

BY ECF
Hon. Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Afrim Kupa, et al.
11 Cr 345 (SLT)

Dear Judge Townes:

     The government continues to mislead.  During a May 14, 2012, court appearance I was asked by Your Honor to provide the Court with an additional copy of the excerpt of the June 28, 2011, tape-recording between the then not signed CW and Mr. Kupa, where the word "coke" was then purported by the government to be heard.  But, the government immediately provided a copy to the Court instead, as I previously wrote,  "as a 'back-door' means to make additional argument on the motion to suppress, where none was then invited."  See ECF Document 77.

It was my understanding that the recording provided to Your Honor by the government was limited to the single excerpt provided to the issuing Magistrate for his consideration. Namely, the excerpt where the issuing Magistrate was <u>misled</u> to believe that the word "coke" was overheard on a consensual recording between the CW and Mr. Kupa. <u>See</u> paragraph 10 of the Affidavit in Support of a Search Warrant <u>and</u> paragraph 26 of the Affidavit in Support of Arrest Warrant attached thereto. So, when we recently appeared before the Court in connection with the suppression motion, I was admittedly caught off guard when Your Honor asked about a recording provided to the Court by the government which contained a conversation between Mr. Sclafani and the CW, <u>and</u> then the CW and Mr. Kupa, and whether this was one continuous recording or "...two separate recordings?" <u>See</u> transcript of July 6, 2012, proceedings before Your Honor attached hereto, at pages 5-6.

The recording provided by the government to Your Honor should have been limited to the single excerpt that was provided to the issuing Magistrate as there was no mention of any other excerpt of a tape-recorded conversation on June 28, 2011, in the Affidavit in Support of a Search Warrant, let alone, any conversation between the CW and Mr. Sclafani that day. <u>See</u> paragraph 10 of the Affidavit in Support of a Search Warrant <u>and</u> paragraph 26 of the Affidavit in Support of Arrest Warrant attached thereto. The government purposely provided the Court with irrelevant portions. And, the government knew in advance that this could make a difference. Indeed, as Your Honor stated in addressing the recordings provided by the government:

> "....I need to know [are those two separate recordings].
>   I mean it makes a difference."

<u>Id.</u> at page 7.

2

      This is the limited and discreet issue which Your Honor specifically ordered the parties to address <u>via</u> a supplemental written submission. <u>See</u> Transcript at page 8. But, the reality is that this evidence should never have been provided by the government to Your Honor for consideration on the motion in the first place.

                    Respectfully submitted,

                          /JRF/

                    James R. Froccaro, Jr.

JRF:tp
Encl.

```
                                                              1

 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - - - X
 3    UNITED STATES OF AMERICA,    :  11-CR-345 (SLT)
                                   :
 4                                 :
                                   :
 5         -against-               :  United States Courthouse
                                   :  Brooklyn, New York
 6                                 :
                                   :
 7                                 :
      AFRIM KUPA,                  :  Friday, July 6, 2012
 8                                 :  11:45 a.m.
                                   :
 9            Defendant.           :
      - - - - - - - - - - - - - - X
10
              TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION
11              BEFORE THE HONORABLE SANDRA L. TOWNES
                 UNITED STATES DISTRICT COURT JUDGE
12
                       A P P E A R A N C E S:
13
      For the Government:    LORETTA E. LYNCH, ESQ.
14                           United States Attorney
                             BY: ROBERT POLEMENI, ESQ.
15
      For the Defendant:     JAMES R. FROCCARO, ESQ.
16

17

18

19    Court Reporter:   Mary Agnes Drury, RPR
                        Official Court Reporter
20                      Telephone: (718) 613-2615
                        Facsimile: (718) 613-2139
21                      E-mail: Mad78910@yahoo.com

22

23    Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.
24

25
```

*Mary Agnes Drury, RPR*
*Official Court Reporter*

2

1 (In open court.)

2 (Defendant present in open court.)

3 COURTROOM DEPUTY: All rise, the United States
4 District Court for the Eastern District of New York is now in
5 session, the Honorable Sandra L. Townes is now presiding.

6 (Honorable Sandra L. Townes takes the bench.)

7 COURTROOM DEPUTY: Calling Criminal Cause for Motion
8 in Docket No. 11-CR-345, *United States of America against*
9 *Afrim Kupa*. Counsel state your name for the record.

10 MR. POLEMENI: Robert Polemeni for the United
11 States. Good morning, your Honor.

12 THE COURT: Good morning.

13 MR. FROCARRO: Good morning, your Honor, James
14 Frocarro for Mr. Kupa.

15 THE COURT: Good morning, and your client is
16 present. All right. I've listened to this recording several
17 times and I, you know, made notes about the parts of it that I
18 could understand. There are some parts that are so -- the
19 speaking -- either they're speaking over one another or it's
20 difficult to hear. I know there's conversation, but I can't
21 make out what it is because it's either I'm unable to hear it
22 because it's spoken softly or they're talking over one
23 another. What I'm doing at this point is going through this
24 and looking at the law, a misstatement or omission is material
25 if it is necessary to the issuing judge's probable cause

3

1  finding, and this is a ruling in Klump, K-L-U-M-P, *United*
2  *States versus Klump*, 536 F.3d 113 at 119 and there the circuit
3  quotes, Canfield 212 F.3d at 718, and the court indicates that
4  "The materiality determination is made through a process of
5  subtraction; Awadallah 349 F.3d at page 364, in which the
6  Canfield court describes as follows, and I'm quoting, "A Court
7  should disregard the allegedly false statements and determine
8  whether the remaining portions of the affidavit would support
9  probable cause to issue the warrant.  If the corrected
10 affidavit supports probable cause, the inaccuracies were not
11 material to the probable cause determination and suppression
12 is inappropriate.  As with the inclusion of false information,
13 omissions from an affidavit that are claimed to be material
14 are governed by the same rules.  The ultimate inquiry is
15 whether after putting aside erroneous information and material
16 omissions, there remains a residue of independent and lawful
17 information sufficient to support probable cause."  And that
18 is Canfield 212 F.3d at page 718, and that's where I am at
19 that.
20         Because my thing is even if you take out the word
21 "coke" is there enough probable cause to support this warrant?
22 I haven't determined yet.  You know, I'm in trial, I'm sorry
23 about that, and I do -- normally I write my own opinions.
24         MR. FROCARRO:  I read about you a lot, Judge, so I
25 know you're still in trial.

```
                                                                4
1              THE COURT:  In criminal cases.  And so that is where
2    I am.  Do you want to be heard on that issue?
3              MR. FROCARRO:  Judge, I'm prepared, I guess your
4    Honor does want to hear more.
5              THE COURT:  No other than --
6              MR. FROCARRO:  I can summarize very quickly, your
7    Honor.
8              THE COURT:  Yes.
9              MR. FROCARRO:  I think when you take that away,
10   you're basically left with the bare conclusions of their
11   informant, who has no prior experience or never says he was
12   reliable before.  The government didn't corroborate what he
13   said, no official delivery, no nothing, it's just basically
14   bare conclusions and I don't think that's enough to support.
15             THE COURT:  Well, what he says is this defendant is
16   the person who re-rocks cocaine for fun and I take it for him.
17   And is this conversation that the FBI -- is that conversation
18   that he has with the defendant, sufficient to corroborate
19   that.
20             MR. FROCARRO:  I just most respectfully don't think
21   it is, Judge, because it's a bare conclusion.  I mean, it
22   would be simple.  I mean, I believe in my papers I cited how
23   when you're dealing with a private residence, it's a little
24   more stricter standard.  It can't be that simple that somebody
25   just says, you know, I re-rock with this fella, and therefore,
```

```
1    it's probable cause and therefore, the house can be searched.
2              THE COURT:  No.  No.  No.  That's not what it is.  I
3    mean, I've been taking notes on it and I'm probably not
4    finished listening to the recording, but he starts out the FBI
5    my good car, no payments left.  And then there is a
6    conversation that we cannot hear clearly, but the FBI or CSI
7    one says, "didn't bring it with me."  And the defendant says,
8    "I'd rather you come nighttime instead of daytime.  Come back
9    as soon as possible; whenever, today, tomorrow.  Grab it and
10   come and do it, do it whenever you want."
11             MR. FROCARRO:  Judge, I still think that that's a
12   bare conclusion.  I mean, it would have been simple for the
13   agents to provide him with cocaine, if that was the case,
14   watch him approach the premises at nighttime and deliver that.
15   I mean, there needs to be more than a conclusion.
16             THE COURT:  Right.  I mean, we wouldn't be here.
17             MR. FROCARRO:  Right, we wouldn't be here.
18             THE COURT:  But let me ask you:  Is that necessary?
19             MR. FROCARRO:  I think it is when you are dealing
20   with an informant that has no prior reliability and when
21   you're, in essence, you are placing the whole finding of
22   probable cause upon his conclusion.
23             THE COURT:  But when you consider that in light of
24   the conversation that he had with Sclafani about re-rocking
25   the cocaine, I'm not sure that on the government's -- on the
```

6

government's recording you have a conversation with Sclafani and a conversation with the defendant, and it seems like this conversation with Sclafani about the re-rocking, and he says, "Can I just show up at his door?" And Sclafani says, "You can't." It appears that this person then got in a vehicle and then drove to the defendant's home. Is that what happened or are those two separate recordings?

    MR. POLEMENI: I'm not sure at this point, your Honor, I would have to go back, I haven't listened to the recordings in awhile.

    MR. FROCARRO: I believe it's two separate recordings, your Honor. I'm pretty familiar with the recordings and I'd stand by that. Of course, if they want the opportunity to go back and look at it, that's my understanding, it's two separate.

    MR. POLEMENI: I mean, it's the same recording in the sense it happened in the same day, I don't believe it's been --

    THE COURT: Well, that's what I want to know.

    MR. POLEMENI: Yes, I believe that is correct.

    THE COURT: Did he have the conversation with Sclafani where he says -- or their conversation is he wants a whole one, he's got to pay cash then, this is what Sclafani says. And he'll pay cash, yes, 35 he'll pay, plus, I'll charge him to redo it. I didn't think of that. He wants

7

1  35,000.  He wants to pay 35,000 and -- he wants to pay 35,000
2  for a whole one and I pay to redo it."  This is what the
3  witness says.  Then Sclafani says, "Charge him like a
4  thousand."  The witness says, "Maybe a thousand or 1,500."
5  And then Sclafani says, "Tell him it cost like this much.
6  Tell him I'll bring it to someone."  And then the witness
7  says, "Just go ring his bell, I guess?"  And Sclafani says,
8  "Yeah."
9       And then it sounds like he gets into his vehicle and
10 drives to the defendant's home where they have this
11 conversation, but I need to know.  I mean, it makes a
12 difference.
13      MR. FROCARRO:  Judge, I know that the fella he's
14 talking about he is selling it to, I'm not sure that anyone is
15 alleging it's Mr. Kupa, if that's what your Honor --
16      THE COURT:  No.  No.  I don't think.  What I'm
17 talking about is this is a conversation that occurs after
18 there is a conversation that is tape recorded with Lombardo
19 where Lombardo sells eight kilograms of cocaine.  And then the
20 next day I think there is this conversation, and I want to
21 know whether the conversation -- because really, what the
22 cooperator is not, I know he's not assigned, but he's a
23 cooperator nevertheless, but what he's saying is I have a
24 buyer for one of those kilos who's willing to pay $35,000
25 cash, and then I have to redo it.  And, you know, they're

```
                                                              8
```

1  talking about whether he would have to pay himself for that or
2  whether the purchaser would have to pay an extra thousand to
3  $1,500, so I do want to know.
4          MR. POLEMENI: We'll go back and review the tapes,
5  Judge, and let you know.
6          THE COURT: All right. I mean, I hate to prolong
7  this, but there are just questions that I have. Because as
8  the Circuit has said, what you do is you subtract those words
9  and see if there's enough without them, and that's what I'm
10 trying to do at this point.
11         MR. FROCARRO: I understand.
12         THE COURT: Okay.
13         MR. FROCARRO: Just that it's going to be limited to
14 that, so the government won't get a whole full blown -- it's
15 limited to the one discrete issue?
16         THE COURT: Yes.
17         MR. FROCARRO: Great.
18         THE COURT: All right. Let's put this -- we want to
19 put this on before our next date, which is in?
20         COURTROOM DEPUTY: Our next date is September 7th,
21 Judge.
22         THE COURT: Okay. I want to put this on this month.
23         COURTROOM DEPUTY: Okay. The 27th, Judge,
24 July 27th?
25         MR. FROCARRO: It's fine with me, your Honor. I

9

1  think I have something on that day, I don't know the time, I
2  don't have my calendar.
3          COURTROOM DEPUTY: July 26th is a Thursday.
4          MR. POLEMENI: Your Honor, I'm actually starting
5  trial next week which will last two weeks through that week,
6  I'm not sure what Rachel's schedule is.
7          THE COURT: Wouldn't it be over before?
8          MR. POLEMENI: I'm sorry, I meant July 16th, I
9  apologize, I start trial, so for those two weeks.
10         THE COURT: Well, let me schedule it that day,
11 because there are several people assigned to this, okay, so
12 we'll schedule it.
13         COURTROOM DEPUTY: July 26th at 11 a.m.
14         MR. FROCARRO: That's fine. Thank you, your Honor.
15         THE COURT: Yes. Okay.
16         (Proceedings adjourned at 12:00 p.m. until July 26th
17 at 11 a.m.)
18
19                          * * * * *

Mary Agnes Drury, RPR
Official Court Reporter