| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| UNITED STATES,<br>　　　　　　　　　Plaintiff,<br>　– against –<br>AFRIM KUPA,<br>　　　　　　　　　Defendant. | **MEMORANDUM & ORDER**<br><br>11-cr-00345 (ERK) |

Korman, *J.*:

The undisputed facts, taken from the U.S. Attorney's letter of April 30, 2020, provide the backdrop for my ruling on Mr. Kupa's motion for compassionate release. On April 10, 2013, the defendant pleaded guilty to conspiracy to possess with intent to distribute cocaine between January 2005 and January 2012, in violation of 21 U.S.C. Section 846. Specifically, the defendant and his brother co-defendant Lulzim Kupa were narcotics dealers based in Staten Island who supplied multi-kilogram amounts of cocaine and marijuana to, among other individuals, co-defendant Joseph Sclafani, a member of the Gambino crime family.

The defendant's criminal history is extensive. In addition to the instant narcotics conviction, the defendant was convicted in 1999 of bank fraud in the Southern District of New York and sentenced to 33 months' imprisonment. In 1999, he was also convicted of racketeering and bank burglary in the Eastern District of New York and sentenced to 37 months' imprisonment. In 2000, he was convicted of narcotics trafficking in the Eastern District of New York and sentenced to 84 months' imprisonment. In 2010, he was convicted of bank burglary, again in the Eastern District of New York, and sentenced to 46 months' imprisonment by Judge Jack B. Weinstein.

The defendant committed the instant narcotics offense after Judge Weinstein had sentenced him on the burglary conviction in 2010 and placed the defendant on home confinement while pending his self-surrender date. Indeed, while confined to the Staten Island home that he shared with his wife and two young children and to which he now asks to be released on home confinement, the defendant stored, cut and distributed multikilogram amounts of cocaine from the residence. At the time of his arrest in August 2011, pursuant to a search warrant, agents seized a kilogram of cocaine, two cocaine "presses," three digital scales and cellphone jammer from the defendant's home.

At his sentencing hearing in the instant case in 2013, Judge Gleeson found that the defendant's criminal history category was level VI and sentenced him to 132 months' imprisonment to run consecutively to the 46-month term of imprisonment imposed by Judge Weinstein on the burglary conviction.

## ANALYSIS

Kupa moves for compassionate release because he has high blood pressure and is obese. These conditions, he argues, would make him "unusually vulnerable to severe illness or death if he is infected with" COVID-19. ECF 395 at 1. Passing over the facts that (1) his blood pressure appears to be well-controlled; (2) obesity is not among the top 10 leading co-morbidity factors for COVID-19; and (3) of the total number of deaths from COVID-19 in New York State (21,640), 3.6%, or 769, were in the defendant's age range (40–49)[1]; Kupa is not at risk of being infected with COVID-19 at the FCI Lewisburg, where he is presently incarcerated. This facility is located

---

[1] New York State Department of Health, COVID-19 Fatality Data, *available at* https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n#/views/NYS%2dCOVID19%2dTracker/NYSDOHCOVID%2d19Tracker%2dFatalities. Because of the huge number of COVID-19 cases in New York, these statistics are relevant not withstanding the fact that the defendant is incarcerated in Pennsylvania.

in Union County, Pennsylvania, which has recorded only 41 cases of coronavirus out of 57,991 total cases in the state, and one out of the 3,806 individuals who have died.[2] The Bureau of Prisons coronavirus website reports that no inmates have been infected with the coronavirus at FCI Lewisburg, and it follows that there have been no deaths.[3] Indeed, the defendant may be at greater risk of being infected with, and dying of, COVID-19 if he returns to his home in Richmond County, in which 12,747 cases of COVID-19 have been reported and in which there have been 664 deaths.[4]

These statistics alone provide a compelling reason to deny the defendant's motion. While I would normally write more, I see no need to do so because of the number of similar applications that need to be decided promptly. It is enough to add that I agree with Chief Judge McMahon that a "court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Gotti*, 2020 WL 497987, at *2 (S.D.N.Y. Jan. 15, 2020) (citing U.S.S.G. § 1B1.13). Title 18 U.S.C. 3553(a) provides in relevant part, that a sentence should be sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. 18 U.S.C.A. § 3553 (West).

The defendant is a career criminal, having spent the majority of his adult life in prison and the significant prison term imposed by Judge Gleeson reflected the defendant's extensive criminal

---

[2] Pennsylvania Department of Health, COVID-19 Data for Pennsylvania, *available at* https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx.
[3] Federal Bureau of Prisons, COVID-19 Update, *available at* https://www.bop.gov/coronavirus/.
[4] New York State Department of Health COVID-19 Tracker, *available at* https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n#/views/NYS-COVID19-Tracker/.

history and the need to protect the public by incapacitating a defendant who was intimately involved in narcotics trafficking in Staten Island—an offense which creates a significant risk of addiction and death from overdose. Moreover, the defendant has repeatedly flouted the Court's orders when it suits his purpose, including running his extensive narcotics business out of his home after Judge Weinstein had permitted him to self-surrender. To permit the defendant an early release to return to the place from which he operated his criminal scheme would disserve the factors in Section 3553(a). These considerations aside, there is reason to question whether such a defendant would comply with the guidelines necessary to avoid the spread of COVID-19.

## CONCLUSION

The defendant's motion is denied.

                                        **SO ORDERED.**

Brooklyn, New York                                       *Edward R. Korman*
May 12, 2020                                             Edward R. Korman
                                                                United States District Judge